# United States District Court

### EASTERN DISTRICT OF TEXAS
#### SHERMAN DIVISION

| | | |
|---|---|---|
| DEAN G. TAPIA | § | |
| | § | |
| V. | § | CASE NO. 4:05cv262 |
| | § | (Judge Schell/Judge Bush) |
| Commissioner of Social | § | |
| Security Administration | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

The Plaintiff brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner denying his claim for Disability Insurance Benefits and Supplemental Security Income.  After carefully reviewing the briefs submitted by the parties, as well as the evidence contained in the administrative record, the Court finds that the Commissioner's decision should be AFFIRMED.

## HISTORY OF THE CASE

Plaintiff originally filed applications for Supplemental Security Income on May 28, 1986, alleging inability to work due to organic mental disorder.  Plaintiff was found to be disabled on July 12, 1986 with an onset date of May 1, 1986, because his impairment kept him from performing any type of work.  On August 1, 2002, Plaintiff was notified that he was no longer considered disabled under the Act due to improvement of his mental condition and that his benefits would terminate in October of 2002.   Plaintiff requested reconsideration, and a hearing was conducted by a disability officer.  The disability officer concluded that Plaintiff had undergone medical

1

improvements since July 12, 1986 and affirmed the cessation of benefits.  Plaintiff

subsequently requested a hearing before an Administrative Law Judge ("ALJ").  After

a hearing, the ALJ issued an unfavorable decision on February 25, 2005.  Plaintiff

subsequently requested that the Appeals Council conduct a review.  The Appeals

Council denied Plaintiff's request on May 6, 2005.  Therefore, the decision of the ALJ

became the final decision of the Commissioner.  Plaintiff now seeks judicial review of

the final administrative decision pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

As of August 1, 2002, Plaintiff was 40 years old with a high school eductation.

According to the ALJ, Plaintiff presented the following factual history:

> The record shows that the claimant has a history of spontaneous
> intracerebral hematoma in the left parietal occipital area fo which he
> underwent a craniotomy and repair in February 1981.  He subsequently
> developed a bleeding gastric ulcer while in a light coma, which eventually
> necessitated a vagotomy and closure of the ulcer.  He then experienced
> dramatic improvement with physical therapy and was released in late
> April to undergo further rehabilitation for residual aphasia (Exhibit 1F).
> However, pyschological testing performed in September 1985 revealed
> that he continued to have residual impairment in his auditory attention,
> concentration, visual short-term memory and frustration tolerance (Exhibit
> 2F).  In addition, a neurological evaluation performed in November
> showed that the claimant had problems with simple arithmetic and short-
> term memory, and that he remained mildly aphasic (Exhibit 3F).  Finally,
> a vocational evaluation performed in December revealed that he had a
> tendency for confused thinking and forgetfulness, that he was unable to
> self-correct errors, and that he maintained a slow work pace.  His
> attendance and punctuality during the evaluation were also felt to be
> below acceptable standards for competitive employment (Exhibit 4F).
>
> Subsequent objective testing has revealed significant improvement in the
> claimant's condition.  A consultative psychological evaluation performed
> in February 2002 indicated that he demonstrated no signs of emotional
> disturbance, that his thought content and processes appeared to be
> intact, that his productivity was essentially within normal limits, that his

remote and immediate memory were intact, while he was only able to remember 1 of 3 objects after 5 minutes in a test of his recent memory, and that his concentration was intact, although he could not spell "world" correctly backwards.  In addition, his full scale IQ score was 83, and achievement testing revealed high school reading ability and 4th grade spelling and math ability, which the examiner felt was more or less commensurate with the claimant's intellectual functioning.

The claimant advised the consultative psychologist that he was able to care for his own personal needs without assistance, that he was able to cook full meals when he wanted to, that he mowed the lawn and took out the trash at home, that he did his own laundry and occasionally shopped for groceries, that he was able to drive, and that he enjoyed talking with friends.  He appeared to have no limitations in his social functioning, his concentration was within expected limits, his pace was felt to be appropriate, and he demonstrated timely completion of tasks. No episodes of decompensation were noted since his impairment began in 1981, and the consultative examiner diagnosed only a personality disorder not otherwise specified, with no Axis I condition at all.

In addition, this examining source concluded that the claimant demonstrated no more than mild symptoms of his diagnosed personality disorder, as reflected by a GAF ("Global Assessment of Functioning") scale score of 70.  The psychologist further noted that, during the evaluation, the claimant "presented himself as being grossly impaired because of poor concentration and poor short-term memory...[but that the] clinical observations and testing performance did not seem to objectively document these complaints very well" (Exhibit 5F).

The claimant also underwent a consultative psychiatric evaluation in February 2003 in connection with his appeal of the decision that his disability had ended.  At that time, he reported that he was still living at home with is mother and step-father, that he had a history of being fired because he did not work fast enough or had problems remembering what to do, and that he quit going to Goodwill because they did not find him a job.  Upon formal mental status evaluation, he was pleasant and cooperative, his mood was good and his affect was reactive and appropriate, he had no abnormal thought content, his speech was normal, he was oriented times four, and his memory was completely intact (he remembered 3 objects of three immediately, 2 after five minutes and the third with prompting, and his historical facts back to 1963).  In addition, his concentration was intact despite modest math skills (he was able to recite the names of the months of the year in reverse order at a fair pace and without error), he was able to think abstractly, and his insight and

judgment were deemed to be fair.

No deficits in daily activities or social functioning were reported by the claimant, and the consultative psychiatrist noted that concentration, persistence and pace were all adequate during the evaluation.   The Plaintiff was diagnosed with a cognitive disorder secondary to stroke, rule out a factitious disorder, and a mixed personality disorder characterized by mild symptoms (with GAF scale score of 65).   In addition, the consultative psychiatrist concluded that his memory and cognitive ability test results were "not significant[ly] worse than would be expected for someone with his limited educational achievement."  The doctor further noted that the claimant did "not really seem to have any motivation to work or to improve" (Exhibit 6F).

The record also contains the report of a neuropsychological evaluation performed by a neuropsychologist hired by the claimant's attorney in preparation for his hearing.  The report of this evaluation, which was performed in December 2004, indicates that the claimant reported having made "numerous attempts to work."   However, these "attempts to work" reportedly consisted of such activities as applying to various employers but getting no reply, being late for an employment interview, and reportedly never hearing back from a counselor with the Texas Rehabilitation Commission.    These examples do not reflect an unsuccessful work attempt.  Nor does the claimant's explanation…"that his disability status discouraged [employers] from hiring him" suggest that he made any legitimate effort at obtaining gainful employment.

The neuropsychologist hired by the claimant's attorney further reported that the claimant reported being able to participate in activities as a member of the Knights of Columbus, that he was able to manage his own finances and pay his own bills with his disability benefits, and that he drove and had his own car.  Throughout the evaluation, the claimant and his mother repeatedly advised the examiner that the claimant was unable to function normally, but he was clinically noted to have concrete but generally logical though processes, a high average fund of knowledge, low average abilities in expressive vocabulary and common sense reasoning, and low average ability in spatial abstract reasoning. He demonstrated borderline impaired ability in verbal abstraction, mental math skills, auditory attention span and visuomotor processing skills. Further, his ability to sustain attention reportedly could not be measured because he had insufficient comprehension of the instructions for the task.  However, I note that the two independent consultative examiners who previously tested him had no difficulty getting the claimant to demonstrate unimpaired sustained attention.

The neuropsychologist further reported that the claimant had difficulty with memory functioning because he could remember only 5 of 16 shopping items on a list, because he recalled only a limited number of details from stories read aloud to him, because he remembered only a limited number of details from designs presented to him, and because he had only sparse recall of a design's outline when asked to copy it.  He was further felt to have impairments in complex cognitive functioning, although no opinion was rendered with respect to his ability to perform simple tasks, and reported deficiencies in verbal fluency appear to have been subjective and were not specifically detailed, as the examiner merely stated his conclusion that the claimant had "significant difficulty assessing a sufficient array of words to express his thoughts and feelings."   I note that the claimant had no such difficulty in the two earlier examinations pertinent to this decision.

> The neuropsychologist also concluded that the claimant had "profoundly limited" insight because his report of his cognitive and behavioral functioning was not consistent with that of his mother.  For example, his mother described him as being significantly depressed, while the claimant stated that he had only mild depression.  Yet, the neuropsychologist also reported that objective testing had revealed no significant symptoms of depression at all....

(T.R. 16-19).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

After considering the record, the ALJ made the prescribed sequential evaluation.

The ALJ made the following findings:

1.    The claimant was found to be disabled withing the meaning of the Social Security Act beginning May 1, 1986 based upon his SSI application protectively filed on May 28, 1986 and his Title II application filed on July 30, 2001, and he has not engaged in substantial gainful activity since that date.

2.    The medical evidence establishes that the claimant currently has an organic mental disorder status post left parieto-occipital intracerebral hematoma and craniotomy, and a diagnosed personality disorder.

3.   The medical evidence establishes that the claimant does not have an impairment or combination of impairments which meets or equals the severity of an impairment listed in Appendix 1, Subpart P, Regulations No. 4.

4.   As of July 12, 1986, the time of the most recent favorable medical decision that the claimant was found to be disabled, he had memory and concentration deficits following a left parieto-occipital intracerebral hematoma and craniotomy.

5.   The medical evidence establishes that there has been improvement in the claimant's medical impairments since July 12, 1986.

6.   The medical improvement is related to claimant's ability to work.

7.   The medical evidence establishes that claimant currently has an impairment or combination of impairments which is severe.

8.   The claimant has underlying medically determinable impairments which reasonably could cause the symptoms alleged; however, based on the record in its entirety, the claimant's testimony and that of his mother concerning his condition was not credible or reasonably supported by the objective medical evidence to the extent that complete disability has been alleged. 20 C.F.R. §§ 404.1529 and 416.929, and 96-7p.

9.   The claimant has the residual functional capacity to perform, on a continuing and sustained basis, the requirements of work activity at all exertional levels which involves only basic repetitive tasks and which does not require the exercise of independent judgment. 20 C.F.R. §§ 404.1545 and 416.945.

10.  The claimant has not engaged in substantial gainful activity in the past 15 years and thus has no past relevant work to which he could return.

11.  The burden has been shifted to the Commissioner to show that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medically determinable impairments, particular functional limitations and relevant vocational characteristics.

12.  As of August 1, 2002, the claimant was 40 years old, which is defined as a younger individual.   20 C.F.R. §§ 404.1563 and 416.963.

13.   The claimant has a 12th [grade] education but is limited to basis repetitive tasks not requiring the exercise of independent judgment.  20 C.F.R. §§ 404.1564 and 416.964.

14.   The claimant has not acquired any work skills from any past relevant work which are transferable to skilled or semi-skilled work activities of other work.  20 C.F.R. §§ 404.1568 and 416.968.

15.   Considering the claimant's residual functional capacity and relevant vocational characteristics, if the claimant could perform a full range of work activity at all exertional levels without nonexertional limitations, Guideline Rule 204 would direct the conclusion that he is not disabled.

16.   The claimant is unable to perform a full range of wok activity at all exertional levels without nonexertional limitations.   However, considering the claimant's residual functional capacity (including nonexertional limitations), age, education, transferable work skills, work history and the expert vocational testimony, there are jobs in significant numbers in the national economy which the claimant can perform.   The jobs and respective incidence in the national economy include: hand packer, with 97,000 such positions existing in the United States and 6,000 such positions existing in Texas; janitor, with 420,000 such positions existing in the United States and 30,000 such positions existing in Texas; and hand laborer, with 350,000 such positions existing in the United States and 20,000 such positions existing in Texas.

17.   The claimant's disability ceased on August 1, 2002.  20 C.F.R. §§ 404.1594(f)(8) and 416.994(b)(5)(viii).

(TR 15-23).

## STANDARD OF REVIEW

In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings, *Dellolio v. Heckler*, 705 F.2d 123 (5th Cir. 1983), and whether the Commissioner applied the proper legal standards in evaluating the evidence.  *Smith v. Schweiker*, 646 F.2d 1075 (5th Cir. 1981); *see* 42 U.S.C. §

405(g).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983).  This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, *Chaney v. Califano*, 588 F.2d 958, 959, (5th Cir. 1979), and conflicts in the evidence are resolved by the Commissioner.  *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

To establish disability, Plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months.  Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy.  42 U.S.C. § 1382(a)(3).

## SEQUENTIAL EVALUATION PROCESS

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability.  20 C.F.R. § 404.1520 (1987). First, a claimant, who at the time of his disability claim, is engaged in substantial gainful employment is not disabled.  20 C.F.R. § 404.1520(b) (1987).  Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience.  20 C.F.R. § 404.1520(c) (1987).   Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to an impairment described in 20 C.F.R., Subpart P, Appendix 1 (1987).  20 C.F.R. § 404.1520(d) (1987).  Fourth, a

claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work.  20 C.F.R. § 404.1520(e) (1987).  Finally, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy.  20 C.F.R. § 404.1529(f) (1987); 42 U.S.C. § 1382(a).

## ANALYSIS

Plaintiff raises the following two issues on appeal: (1) whether the ALJ applied the correct legal standard in evaluating whether Plaintiff's disability has ceased; and (2) whether the ALJ performed a proper medical improvement analysis.

Plaintiff argues that the ALJ improperly placed the burden on him to prove in all respects that his disability had ceased.  In determining whether a plaintiff's disability continues or ceases, specific steps must be followed.  *See* 20 C.F.R. § 416.994 (b)(5).  As the Fifth Circuit noted in *Waters v. Barnhart*, "under the medical improvement standard, the government must in all relevant respects prove that the person is no longer disabled." *Waters v. Barnhart*, 276 F.3d 716, 719 (5th Cir. 2002). The Commissioner bears the burden of proof and may terminate benefits if substantial evidence demonstrates (1) that the claimant has undergone medical improvement related to the ability to do work, and (2) that the claimant is currently able to engage in substantial gainful activity.  *See Griego v. Sullivan*, 940 F.2d 942, 943-44 (5th Cir. 1991).  The ALJ found that Plaintiff had experienced medical improvement related to the ability to work and that Plaintiff is able to perform a significant number of jobs in the national economy (Tr. 16).  After a careful review of the ALJ's findings, the Court holds that the burden of proof was properly applied.

The first consideration is whether Plaintiff has an impairment or combination of impairments, which is the same as, or equivalent to, the medical criteria specified for any impairment listed in 20 C.F.R., pt. 4, subpt. P, app. 1.  *See* 20 C.F.R. § 416.994(b)(5)(i).  The ALJ determined, that as of August 1, 2002, Plaintiff had demonstrated no more than mild limitations in his daily activities and social functioning, that he had no more than moderate limitations in his ability to concentrate, persist on task, and pace himself during tasks, and that he experienced no episodes of decompensation as a result of his organic mental disorder and diagnosed personality disorder under Listings 12.02 and 12.08 (Tr. 19- 20).  However, the ALJ found that Plaintiff's conditions did not meet or medically equal any listed impairment in Appendix 1, Subpt. P, Regulations No. 4 (Tr. 20).

Next, the ALJ evaluated whether Plaintiff had experienced medical improvement and determined that Plaintiff had experienced medical improvement in his impairments since July 12, 1986, the date of the most recent favorable medical decision  (Tr. 20, Finding No. 5).  The ALJ noted that, as of July 12, 1986, the date of the most recent favorable medical decision, Plaintiff was found to be disabled due to memory and concentration deficits following a left parieto-occipial intracerebral hematoma and craniotomy (Tr. 20, Finding No. 4).  Further, it was determined that Plaintiff's impairment was of the severity to keep him from performing any type of work (Tr. 36). The ALJ noted that in September 1985, psychological testing revealed that Plaintiff had residual impairments in his auditory attention, concentration, visual short-term memory, and frustration tolerance (Tr. 16, 154-159).  A neurological evaluation performed on November 26, 1985, revealed that Plaintiff had difficulty with simple

math, short-term memory, and was mildly aphasic (Tr. 160-161).   A vocational evaluation the following month showed that Plaintiff maintained a slow work pace, was unable to self-correct errors, and exhibited a tendency for confused thinking and forgetfulness (Tr. 171-172).

The evidence shows that Plaintiff experienced medical improvement since July 12, 1986, the date of the most recent favorable medical decision.   The ALJ appropriately noted that a psychological evaluation performed in February 2002 by Russell Mitchell, Ph.D., indicated that Plaintiff demonstrated no signs of emotional disturbance, that his thought content and processes appeared to be intact, and that his productivity was essentially within normal limits. Dr. Mitchell stated that objective testing suggested that Plaintiff's memory functioning was within normal limits.  Dr. Mitchell also stated that, based on his observations of Plaintiff's testing behavior, Plaintiff demonstrated timely completion of tasks, concentration that was within expected limits, and an appropriate pace.  Dr. Mitchell assessed Plaintiff with a Global Assessment of Functioning (GAF) score of 70, indicating that Plaintiff was experiencing "some mild symptoms," but was "generally **functioning pretty well**."  Dr. Mitchell observed that Plaintiff presented himself as being grossly impaired due to poor concentration and poor short-term memory, but clinical observations and testing performance did not objectively document these complaints.   Claimant's subjective complaints must be corroborated, at least in part, by objective medical testimony.  *See Wren v. Sullivan*, 925 F.2d 123, 128-29 (5th Cir. 1991); 20 C.F.R. § 416.908. Subjective evidence will not take precedence over conflicting medical evidence.  *See Harper v. Sullivan*, 887 F.2d 93, 96 (5th Cir. 1989).

Plaintiff argues that because Dr. Mitchell stated that his observations were consistent with a September 17, 1985 psychological testing report in which Plaintiff received diagnoses of "[m]ixed substance abuse, atypical conduct (provisional), [b]orderline [p]ersonality [d]isorder and residuals of stroke very mild," Dr. Mitchell's report stands for the premise that Plaintiff's medical condition at the time of his 2002 exam was essentially the same as it was in 1985, and thus he did not experience any medical improvement in his condition.  The ALJ specifically noted that the September 1985 psychological report revealed that Plaintiff had residual impairments in his auditory attention, concentration, visual short-term memory, and frustration tolerance. In contrast, Dr. Mitchell stated that objective testing suggested that Plaintiff's memory functioning was within normal limits.   Dr. Mitchell also observed that Plaintiff demonstrated timely completion of tasks, concentration that was within expected limits, and an appropriate pace. Significantly, Dr. Mitchell observed that Plaintiff presented himself as being grossly impaired due to poor concentration and poor short-term memory, but clinical observations and testing performance did not objectively document these complaints.   Merely because Dr. Mitchell stated that observations from a 1985 examination were essentially the same does not mean that Plaintiff has not experienced  improvement in his mental symptoms as Dr. Mitchell's clinical findings clearly show that Plaintiff did.   *See Anthony*, 954 F.2d at 293 (existence of an impairment does not establish disability); *Barajas v. Heckler*, 738 F.2d 641, 644 (5th Cir. 1984) (mere diagnosis of a condition without resulting significant functional restrictions is not disabling within the Act).

In finding that Plaintiff has experienced medical improvement, the ALJ also

noted that Plaintiff underwent a consultative psychiatric evaluation on February 13, 2003, by David I. Kabel, D.O.  Dr. Kabel noted that Plaintiff was not taking any medications.  Regarding Plaintiff's memory, Dr. Kabel noted that Plaintiff registered 3 of 3 objects immediately, and recalled 2 correctly five minutes later.  Plaintiff recalled the third item as well with prompting and knew the presidents in order as Bush, Clinton, Bush.  As for Plaintiff's concentration, he was able to spell "world" forwards and backwards and performed a set of serial subtractions at a fair pace while only making one error.  Plaintiff was also able to state the months of the year in reverse order without error.  Dr. Kabel opined that Plaintiff's insight and judgment were fair. Dr. Kabel found that Plaintiff's concentration, persistence, and pace were adequate for the interview and formal mental status examination.  Dr. Kabel opined that Plaintiff's memory and cognitive ability testing were not significantly worse than would be expected for someone with Plaintiff's limited educational achievement.   He further opined that Plaintiff did not seem to have any motivation to work or improve.  Dr. Kabel assessed Plaintiff with a GAF score of 65, again indicating that Plaintiff was experiencing "some mild symptoms," but was "generally **functioning pretty well**."

The ALJ also noted that Plaintiff was seen by Dr. Richard L. Fulbright, Ph.D., for a neuropsychological evaluation in December 2004.  Dr. Fulbright opined that Plaintiff's attention, concentration, and memory appeared impaired upon informal examination and that Plaintiff's insight and judgment were poor.  He indicated that testing showed no evidence of motivational problems or malingering.  Dr. Fulbright opined that Plaintiff was disabled due to his neurocognitve and neurobehavioral deficits from his stroke. He further opined that Plaintiff would be unable to succeed in any type

of competitive employment and live independently.

How ever, because Dr. Fulbright's opinion was unsupported and contradicted by the evidence from the other examining mental health professionals of record, the ALJ appropriately discounted it.  *See also Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (any physician's opinion may be rejected when the evidence supports a contrary conclusion).  For example, the ALJ noted that although Dr. Fulbright opined that Plaintiff had significant difficulty in expressing his thoughts and feelings as well as severe impairments in memory and cognitive functioning, the examinations performed by Drs. Mitchell and Kabel in 2002 and 2003, respectively, demonstrate that Plaintiff had no difficulty with his memory, concentration, or attention span. Additionally, although Dr. Fulbright opined that Plaintiff would be "unable to live independently," as noted previously, Drs. Mitchell and Kabel assessed Plaintiff with GAF scores of 65 and 70, respectively.  Such scores indicate that Plaintiff was "**generally functioning pretty well**." *See Diagnostic and Statistical Manual of Mental Disorders IV-TR* 34 (4th ed. 2000) (emphasis added).

The ALJ also properly noted that Dr. Fulbright's conclusions appeared to be based more on Plaintiff's mother's statements, rather than Plaintiff's.  For example, Dr. Fulbright noted that both Plaintiff and his mother had completed a Behavior and Affect Profile, but that there were significant discrepancies between the reports. While Plaintiff did not report nearly as many problems regarding his own behavior as his mother, Dr. Fulbright merely dismissed the discrepancies by attributing them to Plaintiff's "profoundly limited" insight.

Further, although Dr. Fulbright opined that Plaintiff would be unable to engage

14

in any form of competitive employment and would only succeed in a sheltered work environment, again, the evidence shows otherwise.  Plaintiff told Dr. Fulbright about many jobs that he had held, but could not keep for various reasons, none of which were related to impaired memory and/or concentration.  For example, he told Dr. Fulbright that he attempted to work at Goodwill Industries as a driver's helper, but "it didn't work out."  He also worked as a dishwasher at two restaurants, but received an insufficient amount of hours.  Plaintiff also worked at a car wash, but was fired after a disagreement with the assistant manager.  He also worked at Goodwill in 1985, but the job ended when he moved.  Additionally, Plaintiff worked as a personal caregiver for a month in 1997, but could not continue because he did not have any transportation. Plaintiff also went to truck driving school, but left after his mother discovered it was a money making scam.  Social Security regulations state that a claimant will not be considered disabled if he merely remains unemployed because of lack of work, the inability to find work, the unwillingness to perform a particular type of work, or the hiring practices of employers. *See* 20 C.F.R. § 416.966(c); *Harrell v. Bowen*, 862 F.2d 471, 479 (5th Cir. 1988)(unemployment for reasons other than disability will not support a claim for disability benefits).

Plaintiff also testified, as well as stated to Dr. Fulbright and in disability documents, that he had made numerous attempts to obtain work, but often received no reply.  Benefits are intended for persons who are unable to work, not as a substitute for unemployment compensation. *See Celebrezze v. O'Brient*, 323 F.2d 989, 992 (5th Cir. 1963).  Clearly Plaintiff was not only able to work, but believed himself capable of working. Thus, Dr. Fulbright's conclusion that Plaintiff would not

be able to participate in competitive employment is contradicted by Plaintiff's own actions and the ALJ appropriately discounted his opinion.

While Plaintiff claims to continue to experience significant deficits in his short-term memory and concentration, he has acknowledged that he takes no medication and is not receiving any treatment.  Failure to seek treatment is relevant in determining the credibility of a claimant's subjective complaints.  *See Johnson v. Sullivan*, 894 F.2d 683, 685 n.4 (5th Cir. 1988); *see also Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (lack of treatment is an indication of non-disability).

Plaintiff also argues that the ALJ's finding of medical improvement is flawed because he did not take into account all of the limitations set forth in a 1985 vocational evaluation.  The ALJ did indeed note that a December 1985 vocational evaluation showed that Plaintiff had a tendency for confused thinking and forgetfulness and maintained a slow work pace.  However, as the ALJ noted, by February 2002, Dr. Mitchell observed that, through objective testing, Plaintiff demonstrated timely completion of tasks, concentration that was within expected limits, and an appropriate pace.  Dr. Mitchell also administered the Weschler Memory Scale test to Plaintiff, and noted that Plaintiff's memory functioning was within normal limits.  Dr. Kabel also observed that Plaintiff's concentration, persistence, and pace were adequate.  Plaintiff clearly had experienced improvement in his previously disabling memory and concentration.

The third consideration in a medical improvement case is whether Plaintiff's medical improvement is related to the ability to work.  As the ALJ noted, in the comparison point decision (July 12, 1986), it was stated that Plaintiff's mental

impairments prevented him from engaging in any type of work due to problems with his memory and concentration after his stroke.  However, the ALJ found that Plaintiff has clearly demonstrated the ability to perform simple repetitive tasks without limitation as long as he is not required to exercise independent judgment. The ALJ noted that, while significant deficits have been noted with more complex tasks, there is no question that Plaintiff now possesses the ability to sustain basic unskilled job duties.  Further, the ALJ noted that in a September 1985 clinical evaluation, Chris Klass, Ph.D., opined that Plaintiff would have difficulty getting along effectively with authority figures and forming emotionally close and supportive relationships with others.  However, the ALJ noted that more recent clinical evaluations have failed to reveal any observed deficits in social functioning which would preclude Plaintiff from sustaining gainful activity, which is a clear improvement from his prior status. For example, Dr. Mitchell found that Plaintiff appears to interact appropriately and communicate effectively with other people. Dr. Mitchell stated that this impression was supported by reports of cooperative behavior, consideration of others, awareness of other people, and an ability to interact with the public. Dr. Kabel also noted that Plaintiff attends a monthly meeting of the Knights of Columbus, belongs to a church group, and visits a brother occasionally who lives in Dallas.

The medical evidence shows that Plaintiff now has  minimal concentration or memory problems.  Plaintiff's daily activities also bolster the ALJ's determination regarding the functional improvement in Plaintiff's mental abilities.  His mother even acknowledged that Plaintiff drives reasonably well and has his own car.  Plaintiff even applied for a job as a shuttle driver and testified that he believed that he could work

as a driver.  Plaintiff's ability to drive certainly demonstrates a retained ability to handle stress, assess traffic around him and respond accordingly, and concentrate without allowing extraneous distractions to cause him to pose a danger to himself or others as he operates a vehicle.  Plaintiff also attends church, is a member of a church group, plays guitar, shops for groceries and clothing, does laundry and yard work, cooks, does odd jobs around the house, attended community college in 1997 for a semester, and does volunteer work with the Knights of Columbus.  As the ALJ noted, such activities and the objective medical evidence fail to establish that Plaintiff is incapable of sustaining gainful employment.  Thus, the ALJ appropriately determined that Plaintiff's functional ability to perform work-related activities had clearly improved to the point that he could perform simple repetitive tasks without limitation as long as he is not required to execute independent judgment.  Because there has been medical improvement in Plaintiff's condition and that improvement is related to Plaintiff's ability to work, medical exceptions need not be considered.  *See* 20 C.F.R. §§ 416.994(b)(3) and (4), 416.994(b)(5)(iv).

The next consideration is whether Plaintiff continues to have a medically determinable impairment or combination of impairments that is severe.  *See* 20 C.F.R. §§ 416.994(b)(5)(iv).  The ALJ noted that the record reflects that Plaintiff currently has severe impairments in the form of an organic mental disorder post left parieto-occipital intracerebral hematoma and craniotomy and a diagnosed personality disorder.

As noted above, the ALJ determined that Plaintiff had severe impairments.  However, the issue is whether there are impairment-related limitations that would preclude all work activity by Plaintiff.  The ALJ found that Plaintiff had acquired no

work skills from any past relevant work that was transferable to skilled or semi-skilled work activities of other work.  The ALJ met the burden of showing that Plaintiff was capable of performing work at all exertional levels that did not require him to perform more than simple repetitive tasks or exercise independent judgment.  The VE testified that an individual with limitations such as Plaintiff's could perform a significant number of jobs in the national economy such as a hand packer, janitor, and hand laborer.

Plaintiff argues that the ALJ improperly shifted the burden on him to prove that he continued to be disabled, rather than placing the burden on the Commissioner to prove in all respects that his disability had ceased because the ALJ stated that "the burden has been shifted to the Commissioner to show that there are other jobs existing in significant numbers in the national economy . . ."  Plaintiff argues that a different legal standard applies to "medical improvement" cases than to typical disability cases regarding the allocation of burden of proof.  The ALJ did indeed apply the appropriate burden of proof in this case as he utilized the sequential evaluation process used in termination review cases.  *See* 20 C.F.R. § 416.994(b)(5); *Griego*, 940 F.2d at 943-44.  The ALJ made this statement because he was also considering an "initial entitlement" Title II application that was combined with the continuing disability review of the termination of Plaintiff's Title XVI benefits.  "Procedural perfection in administrative proceedings is not required.  Th[e] court will not vacate a judgment unless the substantial rights of a party have been affected."  *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam).  Plaintiff's activity level is certainly consistent with the ALJ's finding that Plaintiff was not precluded from performing work at all exertional levels that do not require performing more than simple

repetitive tasks without exercising independent judgment.  *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995).

The ultimate responsibility for determining Plaintiff's RFC is reserved to the Commissioner.  *See* 20 C.F.R. §§ 416.927(e)(2) and 416.946; Social Security Ruling 96-5p.  At the hearing level, the responsibility for determining Plaintiff's RFC rests with the ALJ.  *See* 20 C.F.R. § 416.946.

Substantial evidence supports the ALJ's finding that Plaintiff's mental impairments do not prevent Plaintiff from performing work at all exertional levels that do not require performing more than simple repetitive tasks or the exercise of independent judgment.  The Commissioner's finding that Plaintiff's disability ceased as of August 1, 2002, is within the purview of the Social Security Act and is consistent with regulatory criteria.  The ALJ's decision that Plaintiff retained the RFC to perform a significant number of jobs in the national economy as of August 1, 2002, is supported by substantial evidence and is a correct application of the law.

## **RECOMMENDATION**

Pursuant to the foregoing, the Court RECOMMENDS that the decision of the Administrative Law Judge be AFFIRMED.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days shall bar an aggrieved party from attacking the factual findings on appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 (1985); *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. 1982) *en banc*.

**SIGNED this 10th day of January, 2006.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE